THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MILOS MANDIC, Defendant-Appellant.

Second District   No. 2—00—1240

Opinion filed October 31, 2001.

Milos Mandic, of Cary, appellant *pro se.*

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Following a bench trial, defendant, Milos Mandic, was found guilty of violation of an order of protection (720 ILCS 5/12—30 (West 2000)) and sentenced to 12 months' supervision. Defendant timely appeals, contending the State failed to prove him guilty beyond a reasonable doubt. Defendant argues that (1) the State failed to prove that he did not have a right to be present at the church where he allegedly violated the stay-away provision of the order by contacting his children, and (2) the State failed to prove he acted intentionally because the trial court improperly applied an unstated mandatory presumption that any contact with a protected person constituted a criminal violation. We affirm.

When a defendant challenges the sufficiency of the evidence, the same standard of review applies to both jury trials and bench trials. *People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000). The applicable standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Patterson*, 314 Ill. App. 3d at 968-69, citing *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In a bench trial, the court is presumed to know the law, and this presumption may only be rebutted when the record affirmatively shows otherwise. *People v. Kelley*, 304 Ill. App. 3d 628, 639 (1999). "The trier of fact in a bench trial is not required to mention everything—or, for that matter, anything—that contributed to its verdict." *People v. Curtis*, 296 Ill. App. 3d 991, 1000 (1998). If the rec-

ord contains facts that support the trial court's finding, the reviewing court may consider those facts to affirm the finding, even if the trial court did not state specifically that it relied on them. *Curtis*, 296 Ill. App. 3d at 1000.

■ ■ The common law recognized that a crime required both *actus reus*, a guilty act, and *mens rea*, a guilty mind, and, with the exception of certain absolute liability offenses, the Criminal Code of 1961 (the Criminal Code) (720 ILCS 5/1—1 *et seq.* (West 2000)) retains this distinction. Compare 720 ILCS 5/4—1 (West 2000) ("Voluntary Act") with 720 ILCS 5/4—3 (West 2000) ("Mental State"). In this case the State was required to prove that defendant (1) committed an act prohibited by an order of protection, or failed to commit an act ordered by an order of protection, and (2) he had been served notice of or otherwise acquired actual knowledge of the contents of the order. 720 ILCS 5/12—30(a) (West 2000).

At trial defendant stipulated that at the time of the alleged violation a valid order of protection was in effect that required him to stay away from his ex-wife and their children. On appeal defendant concedes the validity of the order.

Initially we wish to clarify that, although defendant raises the issue obliquely in his brief, freedom of religion (see U.S. Const., amend I; Ill. Const. 1970, art. I, § 3) is not an issue in this case. The trial court did not construe the order of protection to prohibit defendant from exercising the religion of his choice or prohibit defendant from entering any specific place of worship. The analysis applied by the trial court, and our own, applies equally to a church, shopping center, sports arena, library, or any other place generally open to the public.

■ Defendant argues that the State failed to prove that he did not have a right to be present in the church or the church social hall. However, the State was not required to prove that defendant was present in the church unlawfully. Section 214(b)(3) of the Illinois Domestic Violence Act of 1986 (the Act) allows a trial court to:

> "Order respondent to *stay away from petitioner* or any other person protected by the order of protection, or prohibit respondent from *entering or remaining present at *** specified places* at times when petitioner is present, *or both*, if reasonable, given the balance of hardships. Hardships need not be balanced for the court to enter a stay away order or prohibit entry if respondent has no right to enter the premises." (Emphasis added.) 750 ILCS 60/214(b)(3) (West 2000).

In the present case, the order of protection contained only a general stay-away provision and did not prohibit defendant from entering or remaining at any specific location. There is no evidence that defendant

argued that the stay-away provision would impose a hardship on him by limiting his right to enter the church. However, even if he had asserted that right, defendant's right to be present is not a defense to a violation of the admittedly valid order of protection; it is just one of many factors that the court that entered the order would have been required to consider before granting relief. See 750 ILCS 60/214(c)(2) (West 2000). Therefore, the issue is not whether defendant had a right to be in the church; the issue is whether a trier of fact could conclude that by exercising that right defendant violated the provision requiring him to stay away from his children. See *People v. Zamudio*, 293 Ill. App. 3d 976, 983 (1997) (considering a constitutional right-to-travel challenge to the "following" element of a conviction for stalking).

■ Defendant argues that the trial court presumed that all contact constituted a violation of the stay-away order and thereby violated his right to be presumed innocent. Although defendant devotes a significant portion of his brief to knocking down this straw man, we find no factual basis for this argument in the record. Instead, we find that the trial court's comments reveal that it considered a variety of factors, including defendant's right to visit the church, his knowledge that the children would be present, and whether defendant had an opportunity to avoid an encounter with his children. Therefore, we conclude that the trial court did not apply a mandatory presumption but, rather, fulfilled its duty to construe the undefined phrase "stay away" in light of its ordinary and popularly understood meaning and the facts of this case. See *People v. Stork*, 305 Ill. App. 3d 714, 723 (1999).

■ Defendant also argues that the trial court improperly held that the State was not required to prove intent. During the trial defendant asked a witness whether defendant had expressed his intent to see his ex-wife prior to arriving at the church, and the State objected. The trial court's comments in response to that objection did suggest that defendant's intent was irrelevant. However, motive is irrelevant, and the State was not required to prove that defendant went to the church because he wanted to see his children or that the encounter was the result of a preconceived plan. See *People v. Gee*, 276 Ill. App. 3d 198, 201 (1995). Viewed in context, it appears the trial court's comments regarding "intent" were actually intended to address the question of motive. Moreover, in response to defendant's posttrial motion, the trial court clearly stated that it had found beyond a reasonable doubt that defendant acted intentionally and any failure to mention intent when announcing its original finding of guilt was inadvertent. Therefore, we find that the trial court did not improperly treat defendant's conduct as a strict liability offense.

■ Although we are aware of no case law interpreting the phrase

"stay away," we find the case law interpreting the "following" element of stalking instructive. See *People v. Bailey*, 167 Ill. 2d 210, 229 (1995). We determine that, like "following," a violation of a stay-away order does not encompass aimless, unintentional, or accidental conduct. See *Bailey*, 167 Ill. 2d at 229. The term "stay away" implies proximity in time and space. Whether a defendant who is otherwise lawfully present in a public place comes within sufficient proximity of a protected person who is also present there to constitute a violation of a stay-away order will depend on a variety of factors. See *Bailey*, 167 Ill. 2d at 229. A court should consider factors including, but not limited to, the size of the public area, the total number of people present, the defendant's purpose for being present, the length of time, and when the defendant knew or should have known that a protected party would be present. Conversely, no examination of these factors is required if the order of protection prohibits a defendant from "entering or remaining" in a particular place because the court issuing the order has already defined the area from which the defendant is excluded.

In practice, the line between a defendant's conduct, *actus reus*, and mental state, *mens rea*, does not retain its theoretical brightness. See *People v. Holt*, 271 Ill. App. 3d 1016 (1995). In *Holt*, the defendant was charged with stalking because, *inter alia*, he observed the victim through a window at an ice rink during her private practice time prior to the start of a public skating period. *Holt*, 271 Ill. App. 3d at 1024. The reviewing court held that the trial court could infer that the defendant's otherwise lawful conduct was without lawful justification because he was present with the intent to stalk the victim. *Holt*, 271 Ill. App. 3d at 1025. However, the same conduct at the ice rink constituted part of the surrounding facts and circumstances from which the trial court could infer that the defendant acted knowingly. *Holt*, 271 Ill. App. 3d at 1025, 1029.

■ Admittedly, this case presents an intriguing factual base. If defendant was present at a well-attended mass in a large cathedral and remained at a distance from the protected persons, it might not constitute a violation of a stay-away order. On the other hand, similar conduct might constitute a violation at a sparsely-attended religious ceremony in a small chapel if defendant sat in a pew immediately behind a protected person. However, we need not consider defendant's mere presence at the church in greater detail because the trial court declined to base its finding solely on that presence at the worship service and instead found that defendant had physical contact with his children.

The surrounding facts and circumstances support the trial court's

finding that defendant acted intentionally. Defendant voluntarily entered the church after he was told that his ex-wife and children were expected to attend services that morning. Defendant voluntarily remained in the church sanctuary after he saw that his children were present. Defendant voluntarily entered the church social hall after the service. An attorney who represented defendant's ex-wife, warned defendant that he considered his conduct a violation of the order of protection and would file a complaint if he remained in the social hall. Nevertheless, defendant voluntarily remained in the social hall until the children were released from Sunday school and entered the social hall. The parties presented conflicting testimony regarding whether the children ran to their father voluntarily or were led to him by defendant's mother. However, defendant ultimately came into contact with his children and, according to the testimony of various witnesses, hugged and kissed them.

We determine, as the trial court did, that it is irrelevant whether defendant, acting alone or in concert with his mother, caused the children to come to him or they came to him of their own accord. The Criminal Code of 1961 (720 ILCS 5/1—1 *et seq.* (West 2000)) has eliminated the distinction between "omission" and "act." See 720 ILCS 5/4—1 (West 2000); *People v. Caruso,* 119 Ill. 2d 376, 383 (1987). Or to adopt defendant's terminology, sometimes "the act of not leaving is the same as not staying away." Even if the children voluntarily approached defendant, this was not an aimless, unintentional, or accidental violation of the stay-away order. See *Bailey,* 167 Ill. 2d at 229. Defendant created the conditions that allowed the children to approach him through a series of intentional, affirmative acts. Although under different circumstances defendant's conduct in entering and remaining in the church may have by itself constituted a violation of the order of protection, we have instead highlighted that conduct here as part of the circumstances from which the trial court could infer defendant's intent. See *Holt,* 271 Ill. App. 3d at 1029. We determine that the trial court could rationally conclude that defendant intentionally violated the order of protection by creating the conditions that led to contact in violation of the stay-away portion of that order.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.