2019 IL App (2d) 161097
No. 2-16-1097
Opinion filed August 28, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1063 |
| WILLIAM J. NELSON, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, William J. Nelson, had a daughter with Heather Pittman. Pittman obtained an order of protection against defendant that prohibited him from, among other things, sending mail to Pittman. After defendant sent letters to his daughter at Pittman's address, he was found guilty of violating the order of protection (720 ILCS 5/12-3.4(a)(1)(i) (West 2014)), and he was sentenced to concurrent terms of six years' imprisonment. At issue on appeal is whether defendant was denied his right to present a defense when the court barred him from presenting testimony from two attorneys who had told him that sending letters to his daughter would not violate the order of protection. Because at least parts of some of the letters clearly indicate that

defendant sent the letters to communicate with Pittman and not his daughter, barring the evidence was not improper. Thus, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     After Pittman became pregnant with defendant's child, defendant began acting violently toward her, and she obtained an order of protection. That order of protection "ordered [defendant] to stay at least 1000 feet away from the residence of [Pittman] and/or protected person(s), and their residence, school, daycare, employment and any other specified place." Immediately underneath this provision, the order of protection provided a definition for "stay away." Specifically, the order of protection indicated that:

> " 'Stay Away' means for the [defendant] to refrain from both physical presence and non-physical contact with [Pittman] whether direct, or indirect (including, but not limited to, telephone calls, mail, email, faxes, and written notes), or through third parties who may or may not know about the Order of Protection."

Nothing in the order of protection prohibited defendant from having contact with his infant daughter.

¶ 4     Defendant asserted that, after the order of protection was entered, he sent a letter to "Chief Public Defender Robert York" and "explicitly" asked him, "Am I breaking the law by sending anything to my daughter?" According to defendant, York said, "[N]o, you are not until she is named in an Order of Protection." A week later, defendant asked "Ms. Nevdal" when he saw her in the hallway, "Am I breaking the law by sending anything to my daughter?" According to defendant, Nevdal replied, "No, you are not."[1]

---

[1] Although defendant was represented by counsel, defendant himself alerted the court to

¶ 5 Thereafter, defendant sent numerous letters to Pittman's home that were addressed to his infant daughter. Four of these letters are included in the record on appeal. In these letters, defendant asked Pittman for pictures of his daughter, professed his love for his daughter and Pittman, delineated some stories involving Pittman's drug use, hoped that Pittman would seek drug-addiction treatment, sought revenge against Pittman's ex-boyfriend to whom Pittman allegedly lent money, questioned his daughter's paternity, delineated conversations he and Pittman had about their sex life, and described how he might have sexually assaulted Pittman. Included in one letter was a pamphlet on sexually transmitted diseases and information on sending money through Western Union.

¶ 6 Before trial, defendant advised the court that he was going to seek a mistake-of-law defense. In doing so, defendant wished to present evidence that the two attorneys told him that sending letters to his infant daughter would not violate the terms of the order of protection. Defendant never presented a formal offer of proof concerning to what the two attorneys would testify. Rather, through counsel, he simply indicated repeatedly that "before sending these letters [to his daughter], [defendant] was advised by Mr. York and Ms. Nevdal of the Public Defender's Office that it was legal to do so."

¶ 7 In response, the State filed a motion *in limine* to bar defendant from presenting a mistake-of-law defense. The State claimed that evidence concerning what York and Nevdal told

the substance of his conversations with York and Nevdal at a hearing on a motion to seal letters defendant had written to the judge and the clerk of the court. Defendant told the court about his conversations when the court asked him if there was "[a]nything else that need[ed] to be addressed."

defendant was irrelevant, because "[n]owhere does the [violation of an order of protection] statute state a requirement that the defendant must have knowledge that his act will be a violation of the order." The State contended that all it needed to prove was that "defendant knowingly commit[ted] the act and that he ha[d] notice of the contents of the order of protection." Although the court allowed defendant to testify about his knowledge with regard to his actions, it prohibited defendant from presenting evidence about the conversations he had with the two attorneys about the legality of his acts.

¶ 8 At trial, Pittman testified about the letters. Evidence was also presented that defendant was served with notice of the order of protection. Defendant did not testify. After the jury found him guilty, defendant filed a motion for a new trial, arguing that "it was error to bar the defense from raising an affirmative defense of mistake of law based on legal advice he had received from counsel in a previous case (to the effect that his conduct in the instant case would not violate the law)." The court denied the motion and sentenced defendant. This timely appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10 At issue in this appeal is whether defendant was denied his right to present a defense. There are several impediments that make addressing this issue difficult. For example, defendant never raised this precise issue in the trial court (see *People v. Woods*, 214 Ill. 2d 455, 471 (2005)), and defendant never made a sufficient offer of proof concerning to what specifically the two attorneys would testify (*Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003)). However, even if these impediments would not preclude us from resolving the issue raised, we still could not grant defendant any relief. Because the order of protection precluded defendant from sending mail to Pittman, and because at least some parts of the letters defendant sent to his infant daughter were

clearly intended for Pittman, we must conclude that any testimony from the two attorneys would have been irrelevant.

¶ 11   Although a defendant has a constitutional right to present a defense (*Crane v. Kentucky*, 476 U.S. 683, 690 (1986)), and this right includes presenting evidence tending to negate one or more elements of the charged offense (*People v. Manion*, 67 Ill. 2d 564, 576 (1977)), the right is not without limitations.   For example, a trial court may prevent a defendant from introducing irrelevant or unreliable evidence.  *People v. Hayes*, 353 Ill. App. 3d 578, 583 (2004).  On appeal, we will not reverse the trial court's ruling on the admissibility of evidence absent an abuse of discretion.  *People v. Prather*, 2012 IL App (2d) 111104, ¶ 20.  An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable or where the ruling constitutes an error of law.  *Id.*

¶ 12   As noted, defendant was convicted of violating an order of protection.   A defendant violates an order of protection when he (1) knowingly commits an act prohibited by an order of protection or fails to commit an act ordered by an order of protection and (2) he had been served notice of or otherwise acquired actual knowledge of the contents of the order.  *People v. Mandic*, 325 Ill. App. 3d 544, 547 (2001); see 720 ILCS 5/12-3.4(a) (West 2014).  Defendant claims that testimony from the two attorneys would have negated any finding that he knowingly committed an act prohibited by the order of protection.  We disagree.

¶ 13   Instructive on this point is *People v. Reynolds*, 302 Ill. App. 3d 722 (1999).  There, the defendant, who was prohibited from sending harassing mail to his ex-wife, sent a birthday card and letter to his seven-year-old daughter.  *Id.* at 724.  Inside the card was a harassing Post-it note addressed to the ex-wife.  *Id.*  At trial, the defendant sought to introduce the letter to his daughter.  *Id.* at 729.  The trial court refused to admit it.  *Id.*  On appeal, the reviewing court

found that the letter was properly excluded because it was irrelevant. *Id.* The court asserted that the Post-it note itself, irrespective of the nature of any message sent to the daughter, constituted a violation of the order of protection. See *id.*

¶ 14 Here, although some of the things in the letters could be construed as defendant's attempts to communicate with his infant daughter, other things were clearly directed at Pittman. For example, defendant asked Pittman for a picture of his daughter, he sent Pittman information about sexually transmitted diseases after questioning his daughter's paternity, and he sent information on how to send money to a prisoner after noting that Pittman had lent money to another boyfriend. The fact that some things mentioned in the letters could be construed as innocuous or as defendant's attempts to help Pittman or express his love for her is irrelevant. See *People v. Hoffman*, 2012 IL App (2d) 110462, ¶¶ 3, 14. Further, the inference that the letters were intended as a means of contacting Pittman is bolstered by the fact that defendant's infant daughter was plainly too young to be able to read them herself. Because defendant clearly contacted Pittman, the attorneys' testimony would have been irrelevant and would not have changed the outcome of defendant's trial. See *People v. White*, 2017 IL App (1st) 142358, ¶ 31.

¶ 15 Defendant claims that the State never argued in the trial court that the substance of the letters indicates that defendant was contacting Pittman and not his daughter. However, as the appellee, the State may raise any ground to affirm as long as the factual basis for that ground was before the trial court. See *Beahringer v. Page*, 204 Ill. 2d 363, 370 (2003).

¶ 16                                  III. CONCLUSION

¶ 17 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 18 Affirmed.

**No. 2-16-1097**

| | |
|---|---|
| **Cite as:** | *People v. Nelson*, 2019 IL App (2d) 161097 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 14-CF-1063; the Hon. John J. Kinsella, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Andrew Smith, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People. |