# Illinois Official Reports

## Appellate Court

---

### *People v. Cady*, 2020 IL App (3d) 190199

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEX CADY, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-19-0199 |
| Filed | March 3, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Mercer County, No. 18-CF-65; the Hon. Gregory G. Chickris, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Nate Nieman, of Rock Island, for appellant.<br><br>Meeghan Lee, State's Attorney, of Aledo (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Carter and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State charged defendant, Alex Cady, with four counts of various felony offenses, which included one count of armed violence. Cady entered a fully negotiated guilty plea to the offense of armed violence. He then filed a motion to withdraw his guilty plea, arguing he involuntarily entered the plea. The trial court denied his motion. We reverse the trial court's order, vacate Cady's guilty plea, and remand the case for further proceedings not inconsistent with his constitutional rights.

¶ 2                                                    FACTS
¶ 3    On October 23, 2018, Cady pled guilty to one count of armed violence. He entered the plea as a fully negotiated plea in exchange for a recommended sentence of 15 years to be served at 85%. The State also agreed to dismiss the three other counts against him, which included (1) possession of a stolen firearm (720 ILCS 5/24-3.8(a) (West 2018)), (2) unlawful possession of a weapon (*id.* § 24-1.1(a)), and (3) unlawful possession of weapon by a felon (*id.* § 24-1.6(a)(1)).

¶ 4    The armed violence charge alleged that "on or about June 13, 2018, [Cady] committed the offense of armed violence in that [he], while armed with a dangerous weapon, a .22 Jennings firearm pistol, did sell a stolen firearm, a felony." At the plea hearing, the trial court while admonishing Cady of his rights, told him that the offense of armed violence was punishable by 15 to 45 years in the Department of Corrections. Cady affirmed that he understood the possible punishment. The court also admonished Cady of his trial rights, and Cady affirmed that he understood his rights and was willing to give them up and plead guilty.

¶ 5    For its factual basis, the State explained:

> "On or around June 13th, the defendant, Alex Cady, that and the day before, was making contact with a Mercer County Deputy he believed to be obviously not a deputy but was interested in purchasing a gun. Alex Cady did then ask the deputy, Rodney Taylor, if he was interested in purchasing a gun from him. The officer then went to his superiors. They set up an operation in Viola in order to purchase the stolen weapon. It was agreed that they would meet at the Viola Box Works Place. On the 13th they arrived. The officers were already there and set in place. The CI, or Rodney, the officer, showed up with Officer Franklin Wade. The defendant and the codefendant did show up. They got out of their vehicles. Mr. Cady went to the back of the vehicle, opened it, and got out a stolen .223 Savage. During that process his codefendant flashed a gun. Shots were fired. When both individuals were apprehended, Mr. Cady was found armed with a .22, and as a felon, he's not allowed to have that, but selling a stolen gun while armed with a gun is armed violence."

¶ 6    After the State's recitation, Cady personally said: "And neither the defendant [nor] the codefendant were the ones that shot their weapons, Your Honor, it was a police officer." The State agreed, stating, "Correct." Cady then affirmed that he understood the factual basis, and his plea counsel (Daniel Dalton) affirmed that the evidence was as stated in the factual basis. The trial court accepted the plea deal and sentenced Cady to 15 years with a 3-year mandatory supervised release term. The court set the sentence to be served at 85% with credit for 133 days of time served.

¶ 7     On November 13, 2018, Cady—now represented by Nate Nieman—filed a motion to withdraw his guilty plea. He argued that (1) his guilty plea was due to a misapprehension of the facts or law regarding the charged offense of armed violence and (2) his plea counsel was ineffective in advising him to plead guilty whereas he could not have been convicted of the offense as charged.

¶ 8     On April 9, 2019, the trial court held a hearing on Cady's motion. Cady testified that Dalton did not discuss the plea agreement with him. He stated that Dalton "didn't really give [him] options." He had to either take the plea deal or not. He had no substantive discussion with Dalton on it, but Dalton advised him not to take it to trial. Cady stated that he found out about the possibility of a defense after he hired a new attorney and that had he known of the defense, he would not have pled guilty. Cady however admitted that Dalton met with him and gave him some materials. But he reaffirmed that Dalton had not given him any options. Cady characterized "options" as "something other than 15 years at 85 percent."

¶ 9     At closing arguments, there was colloquy between the attorneys and the trial court about the facts of the case. The court asked whether there were two firearms in the case: "one that he was armed with and then one that he was selling, right?" The State said "yes." The court asked Cady's counsel whether it was his opinion that a conviction could not be sustained. Counsel said: "No, the law determines that." The court said that this reading of the statute was counsel's interpretation. Counsel said that "the words on the *** page say that offenses that" Cady was charged with "are excluded from the armed violence statute as a matter of law." Counsel explained that it was "not open to interpretation." The State said that Cady "was not merely possessing a stolen firearm, but that he was using a .22 pistol for personal use, not be sold, while selling a .223 rifle."

¶ 10    The trial court denied the motion. The court stated that there were "two distinct crimes in [the] charge. One is selling a stolen weapon, and he's armed with another weapon." Cady filed his notice of appeal on April 16, 2019.

¶ 11    This appeal now follows.

                                    ANALYSIS

¶ 13    On appeal, Cady raises the same challenges as in his motion to withdraw the guilty plea: (1) his guilty plea was due to a misapprehension of the facts or law regarding the charged offense of armed violence and (2) his plea counsel was ineffective in advising him to plead guilty because he could not have been convicted of the offense as charged. A defendant does not enjoy an absolute right to withdraw his or her guilty plea. *People v. Williams*, 2019 IL App (3d) 160412, ¶ 19. To the contrary, the defendant bears the burden of demonstrating to the trial court the necessity of withdrawing it. *Id.* Leave to withdraw a guilty plea is granted as required to correct a manifest injustice under the facts of the case. *Id.* A defendant is allowed to withdraw a plea only if it appears that (1) the defendant pled guilty due to a misapprehension of the facts or the law, (2) there is doubt as to the defendant's guilt, (3) the defendant has a meritorious defense, or (4) the ends of justice will be best served by submitting the case to a jury. *Id.* (citing *People v. Davis*, 145 Ill. 2d 240, 244 (1991)). We will reverse the trial court's denial of a motion to withdraw a guilty plea only if we conclude that the court abused its discretion. *Id.* "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable or where the ruling constitutes an error of law." *People v. Nelson*, 2019 IL App (2d) 161097, ¶ 11.

¶ 14    Cady pled guilty to the offense of armed violence as defined in section 33A-2(a) of the Criminal Code of 2012 (720 ILCS 5/33A-2(a) (West 2018)). He argues that, under the facts of his case, he could not be properly convicted of armed violence because the alleged predicate offense of selling a stolen firearm is excluded by the language of section 33A-2(a). We note that sale of a stolen firearm is not an offense in Illinois, but possession of a stolen firearm is. Possession of a stolen firearm occurs when a person "not being entitled to the possession of a firearm, possesses the firearm, knowing it to have been stolen or converted." *Id.* § 24-3.8(a). As shown below, possession of a stolen firearm is disqualified from being a predicate offense for armed violence because its elements include the possession of a dangerous weapon. *People v. Cherry*, 2016 IL 122891, ¶ 21 n.1.

¶ 15    In relevant part, section 33A-2(a) provides:

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except *** any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range." 720 ILCS 5/33A-2(a) (2018).

¶ 16    The issue presented is whether the exception of certain offenses where the possession or use of a dangerous weapon is a statutory element applies to a situation where, like Cady, the defendant was armed with a dangerous weapon while possessing another dangerous weapon he intends to sell or transfer. "Resolution of this issue involves statutory interpretation, which presents a question of law and is subject to *de novo* review." *People v. Clark*, 2019 IL 122891, ¶ 17. "When construing a statute, our primary objective is to ascertain and give effect to the legislature's *** statutory language itself, given its plain and ordinary meaning." *Cherry*, 2016 IL 118728, ¶ 13. We must presume "that the General Assembly did not intend absurdity, inconvenience, or injustice in enacting legislation." *Clark*, 2019 IL 122891, ¶ 20. But, "[u]nless the language of the statute is ambiguous, this court should not resort to further aids of statutory construction and must apply the language as written." *Cherry*, 2016 IL 118728, ¶ 13.

¶ 17    The language of section 33A-2(a) is clear and unambiguous. It "prohibits the predicate use of any felony that 'makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range.' " *Id.* ¶ 15 (quoting 720 ILCS 5/33A-2(b) (West 2010)). In *Cherry*, the Illinois Supreme Court noted that "the language at issue in this case was designed specifically to foreclose any existing or potential proportionate penalties problems that might exist between the armed violence statute and other offenses containing identical elements." *Id.* ¶ 20. It explained that "the legislature enacted Public Act 95-688 (eff. Oct. 23, 2007)," adding the relevant language to the statute, "just months after [the] court's decision in *People v. Hauschild*, 226 Ill. 2d 63 (2007), which held that the sentence for armed robbery with a firearm violated the proportionate penalties clause because it was more severe than the sentence for armed violence predicated on robbery, which has the identical elements." *Cherry*, 2016 IL 122891, ¶ 19. The court reaffirmed its position "that Public Act 95-688 was a direct response to *Hauschild* and remedied the disproportionality that existed between the armed violence and armed robbery statutes." (Internal quotation marks omitted.) *Id.* (citing *People v. Blair*, 2013 IL 114122, ¶ 21). Any felony offense that includes the possession or use of a

dangerous weapon as one of its elements is disqualified from being a predicate for armed violence. *Id.* ¶ 21 n.1.

¶ 18    The State does not dispute this reading of section 33A-2(a). The State instead contends that a strict reading of the statute is inapplicable to this case because Cady was armed with a firearm while intending to sell another firearm. The State presents a distinction without a difference.

¶ 19    If Cady met with Deputy Taylor with only the firearm he intended to sell, he would be guilty of possession of a stolen firearm. 720 ILCS 5/24-3.8(a) (West 2018). He could not have been charged with armed violence. *Cherry*, 2016 IL 122891, ¶ 21 n.1. The presence of an additional firearm—intended for personal use—does not change this outcome. To have a different outcome, we must accept that each firearm creates a separate offense. Offense A would be possession of a stolen firearm; offense B would be armed violence. Offense B cannot be predicated on offense A because that offense's elements include the possession of a dangerous weapon. *Id.* Without a valid predicate offense, offense B cannot be sustained on appeal. *Id.* In accepting the State's distinction, we would create an absurd result, which clearly violates the ordinary reading of the plain language of the statute.

¶ 20    The State cites *People v. Griswald*, 111 Ill. App. 3d 454 (1983), to argue that a strict application of the facts here would itself lead to absurd and unjust results. It contends that our conclusion would create the same sort of problem as the hypotheticals raised in *Griswald*:

> "Would a police officer who testifies as a State's witness while wearing his uniform and side arm and who is later found to have committed perjury be also guilty of armed violence? Would an individual who signs a public aid affidavit required under penalty of perjury, while having a pocket knife in his pocket, be subject to an armed violence charge? Would a defendant, returning from a hunting expedition with his shotgun in his auto, who is involved in an automobile accident and is charged with reckless homicide be also guilty of armed violence? Under a strict and literal reading of the statute as it now exists, the answer apparently would be yes." *Id.* at 456.

¶ 21    These concerns are irrelevant in resolving Cady's case. In *Griswald*, the appellate court construed the prior version of the armed violence statute, which did not include the exclusionary language added by Public Act 95-688. *Id.* at 455-56 (emphasizing that "any felony defined by Illinois law" (internal quotation marks omitted) may be a predicate to armed violence under the version of the statute in effect at the time). The exclusionary language was intended to correct the fact-pattern now before us. *Cherry*, 2016 IL 122891, ¶ 19. The hypotheticals in *Griswald* are neither affected by the amendment nor are they capable of informing our understanding of it.

¶ 22    We find that Cady's guilty plea was due to a misapprehension of the facts of his case and the law relevant to section 33A-2(a). Based on discussions with his attorney, Cady reasonably believed that, if he went to trial, he would be found guilty of armed violence. His attorney led him to believe that the best option for him was to plead guilty. Considering the alleged predicate offense, we find this to be incorrect. The trial court denied Cady's motion to vacate his guilty plea because it concluded that the presence of an additional firearm created "two distinct crimes in [the] charge." As previously noted, this understanding of section 33A-2(a) constitute an error of law. We conclude that the trial court abused its discretion in relying on this erroneous reading of the statute to deny the motion. Therefore, we reverse the trial court's order, vacate Cady's guilty plea, and remand the case for further proceedings not inconsistent

with his constitutional rights.

¶ 23                                    CONCLUSION

¶ 24            The judgment of the circuit court of Mercer County is reversed.

¶ 25            Reversed and remanded.